UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HARTFORD FIRE INSURANCE COMPANY,

                    Petitioner,


          -against-                                              04 Civ. 3333 (LAK)


THE EVERGREEN ORGANIZATION, INC., et al.,

                    Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


          Appearances:


                    James E. Fitzgerald
                    STROOCK & STROOCK & LAVAN LLP
                    *Attorneys for Petitioner*


                    Christopher T. Bradley
                    MARSHALL, CONWAY & WRIGHT, P.C.
                    *Attorneys for Respondents*


LEWIS A. KAPLAN, *District Judge.*

          On September 7, 2005, this Court entered an order granting the petition to compel

arbitration (the "Order"). Respondents now move to dismiss the petition and/or to vacate the order.


                              *Facts*

          This motion arises against the background of a dispute between Hartford Fire

Insurance Company ("Hartford") and The Evergreen Organization, Inc. ("Evergreen"), which it had retained to act and then terminated as program manager for its "GAP" insurance program for vehicles, and Evergreen's principals. The nub of the controversy is Hartford's claim that Evergreen failed to hold in trust certain funds belonging to Hartford, as required by their agreement, and that Evergreen's principals, the individual respondents here, diverted trust funds to their own use.[1] As the details are not material to this motion, there is no need to set them out here.

*The Early Proceedings in this Court*

On or about April 30, 2004, Hartford served a demand for arbitration on Evergreen and the individual respondents and filed a verified petition for provisional relief in aid of arbitration in this Court. On May 4, 2004, it moved for a temporary restraining order, a preliminary injunction, and an order of attachment in aid of arbitration against all of the respondents.

On May 14, 2004, respondents filed an affirmation in opposition to the motion. In addition, respondent Gary Uphouse, former president of Evergreen, filed a separate affirmation in opposition. None of the papers raised any objection to the personal jurisdiction of the Court over any of the respondents.

On May 18, 2004, the Court heard argument on the motion. During the hearing, counsel for respondents complained about the naming of the individual respondents, but immediately added that "we haven't objected to the jurisdiction."[2] The Court then granted petitioner's motion

---

[1] There is a further description in the Court's bench opinion granting Hartford's motion for provisional relief in aid of arbitration. Fitzgerald Aff. Ex. 4 (Vitello Aff. Ex. D, at 21-34).

[2] *Id.* at 8.

in substantial part, ultimately entering a written order on June 8, 2004. Respondents never filed an answer to the petition.

*The Arbitration*

The action then moved to the arbitration front, where a panel was constituted. At the organizational hearing, however, the individual respondents refused to submit to the panel's jurisdiction. In due course, petitioner's counsel informed the panel and the individual respondents that it would seek an order from this Court compelling the individuals to arbitrate. The individual respondents consented to a stay of the arbitration pending a decision by this Court.

*The Second Round in this Court*

On August 11, 2005, petitioner filed a second petition in this action.[3] Whereas the first petition had sought only provisional relief in aid of arbitration,[4] this one sought to compel the individual respondents to arbitrate. The respondents, then represented by new counsel,[5] first obtained the oral agreement of petitioner's counsel to an extension of time within which to answer the new petition and evidently obtained the signature of petitioner's counsel on a stipulation embodying that agreement. Shortly thereafter, however, the respondents' new attorney wrote to

---

[3] Fitzgerald Aff. Ex. 3.

[4] *Id.* Ex. 1.

[5] The Court was unaware of the change of counsel, as respondents never sought court approval of the substitution as required by S.D.N.Y. CIV. R. 1.4.

petitioner's counsel and purported to reject the new petition, claiming that the new petition had been filed improperly and, for the first time, that the Court lacked personal jurisdiction over the individual respondents.[6]   A few days later, respondents' counsel sent another letter to his adversary, this one stating that respondents "will not interpose a response [to the new petition] at this time due to the improper filing" and that respondents would not sign the stipulation embodying the extension of time that they previously had solicited.[7]

Respondents having refused to sign their own proposed stipulation and declined to respond to the new petition, the time to answer expired on September 6, 2005.[8]   The Court, unaware of the events recited just above, entered the Order granting the petition.[9]


*The Present Motion*

Respondents now move to vacate the Order pursuant to Rules 60(b)(1) and 60(b)(4). They contend that it is void, and thus within Rule 60(b)(4), on the grounds that (1) the Court lacked personal jurisdiction over the individual respondents, and (2) the new petition was an amendment of the original and was filed without leave of court or respondents' agreement.   Alternatively, they seek relief pursuant to Rule 60(b)(1), evidently on the ground that the Order was the product of excusable neglect.

---

[6]   Gollub Decl. Ex. 8.

[7]   *Id.* Ex. 9

[8]   Respondents so concede.  Resp. Mem. 15.

[9]   *Id.* Ex. 11.

*Discussion*

*Rule 60(b)(4) – The Claim that the Order is Void*

    *1.    Personal Jurisdiction*

    The individual respondents' personal jurisdiction argument is entirely without merit. The operative law was summarized in his characteristically apt way by Judge Haight:

> "A party not subject to the personal jurisdiction of a court has no duty to respond to its process or rules. Thus until proper service was made . . . [defendant] was under no obligation to respond. Rule 12(a) [which requires an answer or motion in response to a complaint] was simply inapplicable, for subjecting a party to the rules of the court presupposes the court's power over it. Of course, [defendant] could have chosen voluntarily to respond. Had it chosen to appear, it would have been subject to the familiar rule that a voluntary appearance made without objection to the court's personal jurisdiction constitutes submission to jurisdiction."[10]

    Here, the individual respondents appeared by counsel in opposition to the motion for provisional relief. Indeed, Mr. Uphouse filed an affidavit in opposition to that application. Not only did they make no objection to the Court's personal jurisdiction, their counsel affirmatively noted their lack of any objection to it.

    Individual respondents seek to avoid their explicit waiver of the defense by claiming that they made a special appearance for the limited purpose of defending attached property, citing N.Y. CPLR § 320(c). But this argument is devoid of merit.

    The individual respondents did not appear for the purpose of defending attached property. They could not have done so for the simple reason that no property had been attached at

---

[10] *Martocci v. Oceanus Mut. Underwriting Ass'n (Bermuda) Ltd.,* No. 84 Civ. 1025 (CSH), 1985 WL 402, at *2 (S.D.N.Y. Apr. 3, 1985). *See also Grammenos v. Lemos,* 457 F.2d 1067, 1070 (2d Cir. 1972).

the time of their appearance.[11]  They appeared to oppose a motion for a temporary restraining order, a preliminary injunction, both of which were directed in part at them individually, and an order of attachment, which was directed only at Evergreen.[12]  Thus, even if CPLR § 320(c) were applicable in federal court – which is doubtful[13] – it had no application here.

### 2.    The Claim that the Second Petition Was Improper

Respondents next seek vacatur of the Order on the theory that it is void *ab initio* because petitioner failed to obtain leave to amend as allegedly required by Fed. R. Civ. P. 15(a), which provides in relevant part that:

> "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave to amend shall be freely given when justice so requires."

This argument is entirely baseless.

To begin with, the assumption that leave to amend was required rests on the premise that the respondents served a pleading responsive to the original petition.  Parenthetically, this is a rather odd argument for respondents to make – if they served a responsive pleading, their failure to

---

[11]     So far as the record discloses, no property ever has been attached.

[12]     Fitzgerald Aff. Ex. 1, at 13.

[13]     *E.g., United States v. Balanovski,* 236 F.2d 298, 302 (2d Cir. 1956), *cert. denied,* 352 U.S. 968 (1957).  It is worth noting that the author of *Balanovski* was the late Chief Judge Charles Clark, a principal architect of the Federal Rules of Civil Procedure.

object to personal jurisdiction would have waived that defense pursuant to Rule 12(h)(1), irrespective of any explicit waiver or consent to personal jurisdiction. In any case, however, the premise is flawed.

While respondents filed papers in opposition to petitioner's motion for provisional relief,[14] they did not file an answer to the petition. Rule 7(a) makes clear that their opposition to the motion was not a pleading within the meaning of the Civil Rules.[15] Hence, it would not have been a responsive pleading for purposes of Rule 15(a) even if it had been a response to the petition rather than to the motion for provisional relief. As no pleading responsive to the original petition ever was served, petitioner was entitled to amend as of right.

Respondents' argument is without merit on an independent basis. Even assuming that the Order was entered on the basis of an amended petition for which petitioner had failed to secure required leave of court, the failure of the respondents to answer and object to the amended petition waived any procedural irregularity, at least in view of the fact that they knew of the amended petition and deliberately refused to respond to it. It was not for respondents high-handedly to "reject" the new petition based on their unilateral (and incorrect) view of what Rule 15(a) required. The proper

---

[14]

 Gollub Decl. Ex. 15 (Vitiello Decl. ¶ 29).

[15]

 Rule 7(a) provides:

 "There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer."

 Thus, an opposition to a motion is not a "pleading" as used in the Rules of Civil Procedure. *See also, e.g.,* FED. R. CIV. P. 11(a) (distinguishing between pleadings and motions).

course was to file an answer or motion raising the issue with the Court.  Their considered failure to do so in a timely fashion would have deprived them of the opportunity to raise it now, even if the point had merit.

*Rule 60(b)(1)*

Having disposed of respondents' contention that the Order was void, I turn to the contention that it nevertheless should be vacated

Relief is available under Rule 60(b)(1) where the judgment in question was obtained in consequence of, *inter alia,* excusable neglect.  Courts consider whether the default was wilful, whether the moving party has a meritorious defense, and the extent of any prejudice to the non-moving party.[16]

1.      *Wilfulness*

Here, the Order was issued in consequence of respondents' failure to answer the new or amended petition.  That failure was the product of a deliberate decision to "reject" the new petition and to decline to respond to it because respondents (wrongly) thought its service improper absent leave of court.

The Second Circuit has made clear that "a default . . . that is more than merely negligent or careless" is wilful.[17]  In view of the deliberate nature of the failure to respond, the

---

[16]

*E.g., Pecarsky v. Galaxiworld.com Ltd.,* 249 F.3d 167, 171 (2d Cir. 2001).

[17]

*SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998).

default here unquestionably falls into that category.

This conclusion is supported also by another line of authority.  In *Canfield v. Van Atta Buick/GMC Truck, Inc.,*[18] the Circuit held that counsel's failure to follow clear rules does not constitute excusable neglect for Rule 60(b)(1) purposes.[19]  In this case, an answer or motion with respect to the amended or new petition was due within 10 days after service.[20]  In declining to respond to that pleading within the 10 day period, respondents intentionally ignored a perfectly clear and unambiguous rule of civil procedure.

### 2.    Prejudice

Vacating the Order would be highly prejudicial to Hartford.  It has been seeking, without success, to have its disputes with Evergreen and its principals adjudicated for some time. It first demanded arbitration on April 30, 2004, almost two years ago.  Respondents answered the demand on July 19, 2004, but then declined to proceed when the panel, on February 25, 2005, held its organizational meeting.   Almost another year now has passed.  If indeed the individual respondents diverted trust assets belonging to Hartford, they have every interest in stalling, at least in the hope that the delay will produce a settlement, as they rather than Hartford continue to have the use of the money.  The prejudice of the additional delay that would result from vacating the Order is plain.

---

[18]    127 F.3d 248 (2d Cir. 1997).

[19]    *Accord In re Lynch,* 430 F.3d 600, 603 (2d Cir. 2005).

[20]    FED. R. CIV. P. 15(a).

### 3. Meritorious Defense

The crux of the issue individual respondents seek to raise is whether they, as non-signatories to the agreement between Evergreen and Hartford that contains the arbitration clause, may be compelled to have Hartford's claims against them resolved by arbitration. They claim that this may be done only if the corporate veil is pierced and that Evergreen's observance of corporate formalities forecloses such a conclusion.[21]

It does not take much to establish a meritorious defense for purposes of vacating a default judgment. "In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense."[22] But the individual respondents have failed to do so here.

Contrary to respondents' assumption, a non-signatory to an arbitration agreement may be compelled to arbitrate regardless of any piercing of the corporate veil. Indeed, the non-signatory need not even be a shareholder of a corporate party to an arbitration agreement.

In *Thomson-CSF,*[23] the Second Circuit described two different estoppel theories, each a sufficient basis for compelling arbitration between signatories and nonsignatories to an

---

[21]

Resp. Mem. 23-24; Reply Mem. 6-7; Uphouse Aff. *passim.*

[22]

*State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 166 (2d Cir. 2004) (quoting *McNulty,* 137 F.3d at 740) (internal quotation marks omitted).

[23]

*Thomson-CSF, S.A. v. Am. Arb. Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995).

agreement.[24] Under the first, a nonsignatory to an agreement containing an arbitration clause may be compelled to arbitrate with a signatory where the nonsignatory knowingly accepts benefits directly derived from the agreement.[25] Under the second, courts "have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed."[26]

In this case, the individual respondents have not addressed these points. There has been no allegation that they have not knowingly accepted benefits derived directly from the Hartford-Evergreen agreement, which is not surprising in light of the fact that they are the principals of Evergreen and, indeed, are alleged to have diverted from it trust funds that were in Evergreen's hands only by virtue of the agreement. Nor do they deny the obvious fact that the issues that Hartford is seeking to resolve in the arbitration are intertwined with the agreement that Evergreen signed. Accordingly, the individual respondents have not demonstrated a meritorious defense to the claim that they are obliged to arbitrate.

\* \* \*

In view of the fact that each of the considerations pertinent to whether respondents should be relieved of the consequences of their failure to answer the new petition militates against relief, no more need be said. Against the possibility that a reviewing court takes a different view on

---

[24]
    *Id.* at 778-79.

    There are others, including corporate veil piercing. *E.g., Mag Portfolio Consult GmbH v. Merlin Biomed Group LLC,* 268 F.3d 58, 61 (2d Cir. 2001).

[25]
    *Id.*

[26]
    *Id.* at 779 (emphasis in original).

the question whether the individual respondents have made out a meritorious defense, however, I should add that I would have reached the same result even if I thought that they had done so. The failure to respond was a deliberate and cavalier action by respondents' attorney. The Court of Appeals "consistently [has] declined to relieve a client under subsection (1) [of Rule 60(b)] of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload."[27] *A fortiori,* it should do so where the judgment is the product of a deliberate decision, especially where, as here, substantial prejudice would be suffered by the non-defaulting party in the event the judgment were vacated.

*Conclusion*

For the foregoing reasons, respondents' motion is denied in all respects.

SO ORDERED.

Dated:        January 17, 2006

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[27] *Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir. 1986).